CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 14 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JEFFREY GARDNER, | ) | CASE No. 7:13CV00429 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| T. MOULD, et al., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

Jeffery Gardner, a Virginia inmate proceeding pro se, is pursuing this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First and Fourteenth Amendments. He alleges that on four occasions, prison officials ruled that mail order commercial photographs he had purchased violated prison regulations and immediately returned them to the vendors. Defendants have filed a motion to dismiss, and Gardner has filed a response.[1] After review of the record, the court will grant defendants' motion.

I

Gardner is incarcerated at Pocohontas State Correctional Center ("PSCC"). In 2013, he submitted four separate orders for photographs of nude models to vendors, including Casey Nall and Branletts. PSCC mailroom staff processed each order under Virginia Department of Corrections ("VDOC") Operating Procedures ("OP") 803.1 and 803.2.

OP 803.1 contains various restrictions and procedures to ensure "the efficient, safe, and secure handling and processing of [incoming and outgoing] correspondence" for VDOC

---

[1] Gardner's response to the motion for summary judgment presents additional documentation and argument. Although Gardner does not move to amend his complaint to add these materials, the court has considered them for purposes of understanding his allegations.

inmates.[2] OP 803.1(I). "Commercially distributed or personal photographs . . . that by the nature of the content pose[ ] a threat to personal or facility safety and security, or meet the Specific Criteria for Publication Disapproval in [OP 803.2] are prohibited." OP 803.1(IV)(B)(8)(a). The referenced criteria in OP 803.2 states, in pertinent part:

> The Facility Unit Head should disapprove a publication for receipt and possession by offenders . . . if the publication can be reasonably documented to violate any of the following criteria:
>
> A.    Material that emphasizes explicit or graphic depictions or descriptions of sexual acts, including, but not limited to:
>
>> 1.    Actual sexual intercourse (vaginal, anal, or oral) including inanimate object penetration
>> 2.    Secretion or excretion of bodily fluids or substances in the context of sexual activity
>> 3.    Bondage, sadistic, masochistic, or other violent acts in the context of sexual activity
>> 4.    Any sexual acts in violation of state or federal law.
>
> NOTE: This criterion shall not be used to exclude publications in the context of a story or moral teaching unless the description of such acts is the primary purpose of the publication. No publication generally recognized as having artistic or literary value should be excluded under this criterion. Questionable materials shall be submitted to the PRC[.]

OP 803.2(IV)(L)(A).[3]

When mailroom staff find that incoming correspondence contains items regulated by OP 803.1, such as commercial photographs, and includes items unauthorized under the policy, they will log and return the correspondence, including the prohibited items, to the sender. OP 803.1(IV)(B)(8)(a). The intended recipient inmate will be notified that his incoming package was disallowed and returned, and may file grievances about the incident, but he has "no input on disposition" of such items. OP 803.1(IV)(B)(20)(i). On the other hand, if prison officials reject

---

[2] See https://vadoc.virginia.gov/about/procedures/documents/800/803-1.pdf (last visited June 18, 2014).

[3] See https://vadoc.virginia.gov/about/procedures/documents/800/803-2.pdf (last visited June 19, 2014).

2

an offender's incoming <u>publication</u> as sexually explicit under the policy criteria, the offender may seek review of that decision by the Publication Review Committee ("PRC") in Richmond. If the PRC disapproves an inmate's publication, the inmate may inform staff how he wishes to dispose of the disapproved item.

In Gardner's first order, placed on March 20, 2013, one of the three envelopes received in the PSCC mailroom was returned the next day, because it exceeded a one-ounce limit for incoming correspondence under OP 803.1(IV)(B)(3)(a). However, as an approved vendor, Casey Nall was not subject to this one-ounce limit. As to this order, Gardner filed a grievance, and officials acknowledged the mistake. They then allowed Gardner to reorder the photographs. Gardner complains that officials did not notify him or provide him a chance to appeal before they returned the items.[4] Because the vendor has a policy of not remailing returned photo orders, Gardner had to pay for the replacements.

Gardner placed a second order on April 3, 2013. When that order arrived from the vendor, PSCC officials rejected and returned envelopes containing ten photos and sixteen photo catalogs Gardner had purchased, because the items contained sexually explicit material prohibited by OP 803.1. In response to Gardner's grievance, officials stated that the catalogs had been "previously disapproved by the Publication Review Committee for containing [images of] bodily fluids, penetration, masturbation, etc. [and t]he photos were denied due to containing images of bodily fluids as well as photos of females touching themselves and/or masturbating." (Compl. Ex. 9.) The reviewing officer upheld the level one response.

From Gardner's third order, placed on April 10, 2013, officials denied and returned envelopes containing ten photographs, because they included "[g]raphic and or explicit

---

[4] Gardner also complains that officials did not provide him with an unauthorized mail notice for the rejected photographs.

3

nude/semi nude commercial photos" prohibited under OP 803.1 and OP 803.2. (Compl. Ex. 11.) Gardner filed a grievance, again arguing that the photographs he had ordered did not meet the criteria for prohibited, sexually explicit material. He received a level one response stating "the photographs that were denied on 5/3/13 were done so based on containing images of women touching themselves and/or masturbating; per policy this is not permitted for commercial photographs." (Compl. Ex. 13.) The response also stated that because commercial photographs are not defined as publications, the decision to deny them under OP 803.1 is not subject to review above the facility level. On appeal, the reviewing officer upheld the level one response as an appropriate application of the policy.

Gardner's final order of photographs, placed on June 26, 2013, consisted of eight envelopes with five pictures in each envelope. Officials denied two of the eight envelopes under OP 803.1 because the vendor included free, sexually explicit catalogs in those envelopes.[5] Officials returned the two envelopes of photographs to the vendor. Gardner received two publication disapproval forms for the two disapproved catalogs, but did not receive unauthorized mail notices for the returned photos. Gardner filed a grievance regarding this order within the five-day time period. He did not attach the two disapproval forms to show why officials returned the orders to the vendor, however, and on that ground, officials eventually rejected his grievance as untimely and incomplete.

In this § 1983 action, Gardner sues PSCC Mailroom Supervisor T. Mould, Warden S.K. Young, VDOC Director Harold Clarke, and Regional Director G. Hinkle. Gardner asserts that the PSCC interpretation of the commercial photo policy violates his First Amendment rights and

---

[5] Gardner submits a photocopy of thumbnail replicas of the photos from his fourth order, on which he has highlighted the ten photographs that he believes officials returned. (Response Ex. 47, ECF No. 25-2.) Because the return of these photos was based on the fact that the envelopes included catalogs already disapproved by the PRC, however, the poses included on this sheet are not relevant to the rejection of his other orders based on the content of those photos themselves.

4

deprived him of liberty and property interests without due process.[6] He seeks compensatory damages for money he spent on replacement photos and postage, along with punitive damages and unspecified injunctive relief.

## II

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action fails to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, to state a cause of action under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Defendants argue that dismissal is required because Gardner's allegations do not state any constitutional claim actionable under § 1983 against the defendants. The court agrees.

### A. First Amendment Claims

Sexual expression which is indecent but not obscene is protected by the First Amendment. Reno v. American Civil Liberties Union, 521 U.S. 844, 874 (1997). As a prison inmate, however, Gardner retains only those "First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections

---

[6] The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. The Fourteenth Amendment states, in relevant part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.

system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Prison officials may lawfully adopt regulations that restrict an inmate's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 87 (1987).

The Turner decision identifies a four-factor inquiry a court must apply to determine if a challenged regulation withstands constitutional scrutiny:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates" . . . ; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns."

Lovelace v. Lee, 472 F.3d 174, 200 (4th Cir. 2006) (quoting Turner, 482 U.S. at 89-92) (internal quotation marks and citations omitted)). These deferential standards rest on the well-established principle that prison administrators are better equipped and positioned than courts "to make the difficult judgments concerning institutional operations." Thornburgh v. Abbott, 490 U.S. 401, 409 (1989) (quotations and citations omitted). The inquiry for the court is not whether the regulation actually advances the stated government interest, but only whether the policymaker "might reasonably have thought that it would." Amatel v. Reno, 156 F.3d 192, 198 (D.C. Cir. 1998). The plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. See Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir. 1993). An officer's negligent conduct that interferes with an inmate's First Amendment rights is not actionable under § 1983. Lovelace, 472 F.3d at 201; Pearson v. Simms, 345 F. Supp. 2d 515, 519 (D. Md. 2003), aff'd, 88 F. App'x 639 (4th Cir. 2004) (holding that "occasional incidents of delay or non-delivery of mail" are not actionable under § 1983).

### 1. March 20, 2013 Order: Misapplied Weight Limit

Gardner has no actionable First Amendment claim based on an officer's return of his March 20 order because it exceeded the one-ounce weight limit for incoming mail. When Gardner complained, officials agreed that the policy did not bar his package. They told him that a mailroom official had simply overlooked that fact Casey Nall was an approved vendor who was not subject to the weight limit. Gardner does not state any facts suggesting that the official intentionally misapplied the weight limit to his photograph order. The officer's negligent interference with Gardner's incoming mail does not state a First Amendment claim actionable under § 1983. Lovelace, 472 F.3d at 201.

### 2. Materials Barred as Sexually Explicit

Liberally construed, Gardner's submissions assert that the photograph policy, stated in OP 803.1 and O.P. 803.2 by reference, is facially invalid because it is overbroad, which allowed it to be arbitrarily applied to prohibit receipt of his April 3, April 10, and June 26, 2013 orders. His arguments rest on the fact that the policy does not explicitly bar him from possessing depictions of masturbation or females touching themselves. The court concludes that the policy survives this constitutional challenge under Turner.

This court found that a prior version of OP 803.2 was overbroad and arbitrarily applied. See Couch v. Jabe, 737 F.Supp.2d 561, 567 (4th Cir. 2010). Specifically, the court found that the policy, as then worded, allowed "bizarre interpretation[s] of [the] regulation which result[ed] in the prohibition of James Joyce's Ulysses but [allowed] the distribution of Sports Illustrated Swimsuit Edition." Id. at 571. The court ruled that because such results were not reasonably related to the policy's goals of enhancing "security, discipline, good order and offender

rehabilitation," the regulation was unconstitutional. Id. at 567. The VDOC subsequently amended the policy to correct this particular problem.

In analyzing OP 803.2, however, the court held that the policy's objectives and goals were unquestionably legitimate and content-neutral. Id. The court also emphasized that common sense connections like those the Couch defendants offered can be sufficient evidence of a rational link between legitimate objectives and a challenged regulation to satisfy the first requirement of the Turner standard. Id. at 570 (citing Amatel, 156 F.3d at 199)). Indeed, the court found it "undeniable that O.P. 803.2 can be applied to material which may be injurious to prison objectives, and with respect to those publications the regulation would be supported by a rational connection."[7] Id. at 571. In Gardner's case, under the current version of OP 803.2, the court finds sufficient common sense reasons that the regulation's prohibitions of explicit photographs of sexual acts, including masturbation, are rationally related to furtherance of its policy goals.

Prison officials might reasonably have believed that the current OP 803.2 prohibitions address the same potential dangers as argued by the defendants in Couch: that all "sexually explicit materials are considered valuable currency and used in bartering within the prison setting"; that "the possession of such items may lead to stealing, fights, assaults and other disruptive activities"; that "constant exposure to sexually explicit material may promote violence among certain offenders who have a predisposition to seeking immediate . . . gratification sexually"; that "permitting access to sexually explicit materials undermines rehabilitation efforts"; and that "excluding sexually explicit materials is necessary to reduce the sexual harassment of staff and their exposure to a hostile work environment." Id. at 570. Gardner

---

[7] See also Hodges v. Virginia, 871 F. Supp. 873, 876 (W.D. Va. 1994), rev'd on other grounds, Montcalm Publ. Corp. v. Beck, 80 F.3d 105 (4th Cir. 1996) (finding under prior version of regulation that "[t]he interests articulated by the VDOC, security, discipline, order, public safety, and rehabilitation, need no defense.").

8

certainly offers no rationale which compels the conclusion that the prohibitions in OP 803.2 are <u>not</u> reasonably related to preventing such common sense, potentially adverse effects on security and order among prisoners and staff.

Moreover, Gardner fails to demonstrate that banning photographs of women masturbating or touching themselves in a sexual manner is an illogical or unexpected application of the OP 803.2 language so as to invalidate the policy as arbitrary. Under OP 803.1, officials may deny possession of such photos upon finding that their content "<u>poses a threat to personal or facility safety</u> and security, or meet[s]" the criteria in OP 803.2.[8] The criteria in OP 803.2, incorporated by reference into OP 803.1, require disapproval of items that "can be reasonably documented to . . . emphasize[ ] explicit or graphic depictions . . . of <u>sexual acts, including, but not limited to</u>" listed examples of acts that meet this general definition. OP 803.2(IV)(L)(A) (emphasis added). Masturbation/touching oneself certainly qualifies as a sexual act that falls under the "including, but not limited to" phrase of OP 803.2. Moreover, prison officials could reasonably have believed that banning pictures of models simulating masturbation would avoid encouraging inmates to perform similar sexual acts in public to harass staff members. Therefore, the OP satisfies the first prong under <u>Turner</u>. 482 U.S. at 89-90.

The second factor of <u>Turner</u> asks whether alternative means of exercising the right remain open to prison inmates. <u>Id.</u> at 90. The VDOC policies clearly satisfy this factor. Under OP 803.1 and OP 803.2, Gardner may order a wide variety of publications and nude pictures as

---

[8] To the extent that Gardner faults defendants for citing the wrong policy in denying his orders, he states no constitutional claim. <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387, 392 (4th Cir. 1990) (finding violations of state law by state officials do not provide basis for constitutional claims under § 1983). Moreover, because the provision regulating commercial photographs, OP 803.1, incorporates a portion of OP 803.2 by reference, an officer might rightfully cite either procedure number as the basis for denying an incoming mail order of photographs.

9

long as they do not depict sexual acts. Gardner admits that he has successfully ordered numerous nude pictures that officials did not bar as sexually explicit under OP 803.2.

The third factor asks what impact the accommodation of the asserted right would have on security staff, inmates, and the allocation of prison resources. Turner, 482 U.S. 90. As previously mentioned, the sexually explicit photographs can encourage sexual harassment and undermine rehabilitation efforts. The photos can also be easily circulated throughout the prison, causing an adverse, "ripple effect" on other inmates or prison staff. Id.

Finally, Turner asks whether there exists any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns." Id. (noting that this is not a least restrictive alternative test, but whether a prisoner can assert an alternative at de minimis cost to valid penological interests). Gardner has not asserted any alternatives, and the court can conceive of none. In fact, Gardner states he "understand[s] the need to restrict the material set out in OP 803.2's specific criteria for disapproval . . ." EFC No. 25. Therefore, this factor is met as well. In short, Gardner has not—and cannot—establish that OP 803.2 is unconstitutional on its face.

To the extent Gardner claims that PSCC officials applied OP 803.2 improperly to bar his photographs and catalogs, the court also finds he has not stated a valid claim for relief. Gardner contends that unless a picture shows penetration or a second person, it does not depict a sexual act that could be properly barred under OP 803.2. He further asserts that since his order form expressly asked the vendors to exclude penetration pictures, the vendors would not have sent him any such pictures or catalogs, and PSCC officials erred in returning his orders. Gardner also asserts that he had possessed photographs and catalogs from the same vendors at other VDOC facilities.

10

It is well established that "[w]here the regulations at issue concern the entry of materials into the prison, . . . a regulation which gives prison authorities broad discretion is appropriate." Thornburgh, 490 U.S. at 416. The required exercise of discretion may result in some "seeming inconsistencies" in varying applications of the policy at different institutions over time. Id. at 417 n. 15. Mere variability is not necessarily arbitrary or irrational, however, so as to invalidate the policy itself. Indeed, such seemingly inconsistent results might be remedied only by a more restrictive policy, which could lead to the exclusion of photographs that would have been otherwise acceptable. Smalls v. Johnson, No. 7:06CV00029, 2006 WL 2456343, at *4 n. 2 (W.D. Va. Aug. 21, 2006) (quoting Thornburgh, 490 U.S. at 417, n. 15 ("Given the likely variability within and between institutions over time, greater consistency might be attainable only at the cost of a more broadly restrictive rule against admission of incoming publications.")).

Gardner's evidence is not sufficient to demonstrate that OP 803.2 is inconsistently applied, let alone that its wording is not specific enough to prevent arbitrary applications. From Gardner's submissions, it is evident that the PSCC determinations to bar photographs of masturbation and touching were consistent with past PRC rulings regarding similar images in publications. (See, e.g., Compl. Ex. 9, ECF No. 1-1) ("The flyers that were denied were . . . previously disapproved by the [PRC] for containing bodily fluids, penetration, masturbation, etc."). Gardner does not allege that prison officials had allowed him to possess images of masturbation or sexually suggestive touching in the past. Certainly, the mere fact that he possessed photographs or catalogs from the same vendor in the past does not prove that the returned envelopes from his 2013 orders contained no photos objectionable under OP 803.2.

For the stated reasons, the court does not find that officials' interpretation of the OP 803.2 restrictions to include masturbation and touching oneself was so arbitrary or irrational as to

11

invalidate the policy or represent a constitutionally significant misapplication of the policy. Because prison officials could reasonably believe that barring such pictures furthered legitimate interests in limiting sexual harassment and enhancing security and rehabilitation, the court concludes that Gardner has no First Amendment claim actionable under § 1983 as to the rejection of photographs and catalogs from April and June 2013 orders.

### B. Due Process Claims

Allegations that prison officials randomly deprived an inmate of his property, whether intentionally or as a result of negligence, do not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). An official does not violate an inmate's federal due process rights merely by violating "a state-created rule regulating the deprivation of a property interest." Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) (finding that the "federal standard of what process is due . . . is not defined by state-created procedures").

Under these principles, the PSCC official who inadvertently returned Gardner's first order of photographs as exceeding an inapplicable weight limit did not violate the inmate's federal due process rights. Moreover, Gardner possesses tort remedies under Virginia state law to seek recovery of financial losses caused by a prison official's negligence. See Virginia Code § 8.01-195.3. Therefore, the court will grant the motion to dismiss as to Gardner's due process claims regarding his first order.

The due process analysis is slightly different when prison officials deprive an inmate of his property interests pursuant to prison policy, such as OP 803.1 and OP 803.2. Courts have approved the following minimal safeguards for withholding of prisoners' incoming publications: "(1) appropriate notice; (2) a reasonable opportunity to challenge the initial determination; and

12

(3) an ultimate decision by a disinterested party not privy to the initial censorship determination." Hopkins v. Collins, 548 F.2d 503, 504 (4th Cir. 1977). This third safeguard can be satisfied if complaints about the withholding of an incoming mail item are "referred to a prison official other than the person who originally disapproved the correspondence." Id. (quoting Procunier v. Martinez, 416 U.S. 396, 419 (1974). Furthermore, where the inmate maintains control over the disposal of a prohibited item, there is no deprivation of a protected property interest. See Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991) (finding no deprivation of property where ring and postage stamps seized by prison officials and sent to an address of inmate's choosing); Pryor-El v. Kelly, 892 F. Supp. 261, 271 (D.D.C.1995) (finding no deprivation where prison officials allowed shipment of inmate's disallowed personal property to his home at his expense). Even if a prison official returned mail to the sender when it might have been deemed permissible property for the inmate to possess, isolated incidents of "wrongfully returned mail do[ ] not rise above negligence and, therefore, fail[ ] to state a claim under § 1983." Whitehouse v. Corner, No. 1:10cv1020(CMH/TRJ), 2012 WL 508628, at *3 (E.D. Va. 2012) (citing Daniels v. Williams, 474 U.S. 327, 328 (1986) (finding no due process problem where official returned photo of semi-nude infant).

Gardner has no due process claim regarding any of the catalogs from his second and fourth orders that he could not possess under OP 803.1. These publication items were reviewed and disapproved under OP 803.2 by the PRC as a disinterested party. Moreover, Gardner was not deprived of his property interest in the catalogs, since he had an opportunity to control the manner in which officials disposed of them.

The court also finds that Gardner's liberty and property interests in the photographs in all three of his rejected orders were adequately protected by the procedures in OP 803.1. Gardner

13

had prior notice through the language of the policy that incoming mail containing prohibited, nonpublication items would be returned to the sender if safely possible, without officials first consulting him. He also had prior notice that commercial photographs were not included in the definition of a publication and would not be sent to the PRC for review before being returned to the vendor. By placing the orders, Gardner assumed the risk that the vendor might include photos that violated OP 803.2, which would result in his orders being immediately returned, without any provision to reimburse him for postage costs.[9] Finally, Gardner received notice each time officials returned one of the envelopes of photographs he had ordered, and he had an opportunity to protest the officials' action through the grievance procedures to some degree.[10] Requiring prison staff to forward every envelope of photographs to the PRC for review would be overly burdensome, and Gardner offers no evidence that such a procedure would likely result in fewer illegitimate deprivations under the criteria in OP 803.2. Accordingly, the court concludes that the existing procedural scheme provides adequate protection for inmates' property interests related to such mail order items. Therefore, the court will grant defendants' motion to dismiss Gardner's due process claims in their entirety.

---

[9] The court notes that Gardner did not explain to the vendor that the images prohibited by OP 802.3 were not limited to depictions of the types of sexual acts listed in the policy. If Gardner chooses to order additional pictures, he can reduce the risk of having his orders prohibited under OP 803.2 by providing the vendor with a more complete version of the policy.

[10] Gardner complains that PSCC officials deprived him of the opportunity to pursue grievance remedies regarding his fourth order of photographs and thereby denied him due process. Gardner admits, however, that he did not attach the two publication disapproval forms he received as the basis for the return of his mail, which rendered his grievance incomplete at intake. For this reason, his claim regarding his fourth order might also be dismissed under 42 U.S.C. § 1997e(a), based on his failure to exhaust available administrative remedies.

Case 7:13-cv-00429-GEC-RSB   Document 31   Filed 07/14/14   Page 14 of 15   Pageid#: 184

## III

For the stated reasons, the court grants Defendants' motion to dismiss as to all of Gardner's claims. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Plaintiff and counsel for Defendants.

ENTER: This 14th day of July, 2014.

/s/ Glen Conrad
Chief United States District Judge

15

Case 7:13-cv-00429-GEC-RSB   Document 31   Filed 07/14/14   Page 15 of 15   Pageid#: 185